JOURNAL ENTRY AND OPINION
Plaintiff-appellant Bernice M. Siegal ("plaintiff") appeals from the trial court's order entering final judgment on the verdict in favor of defendant-appellee Magic Carpet Upholstery ("defendant"). plaintiff assigns the following error for our review:
 THE VERDICT AND JUDGMENT ENTERED THEREON IN FAVOR OF DEFENDANT-APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED AND A NEW TRIAL ORDERED IN THE INTEREST OF JUSTICE, PURSUANT TO THE PROVISIONS OF THE OHIO CONSTITUTION ARTICLE IV, SECTION 3(B)(3) AND OHIO REVISED CODE § 2321.01.
Finding plaintiff's assignment of error to lack merit, the judgment of the trial court is affirmed.
 I.
On December 21, 1994, plaintiff's landlord employed defendant to clean portions of the carpeting in plaintiff's apartment. While defendant's employees were cleaning the carpet in plaintiff's apartment, plaintiff allegedly tripped on a conspicuous orange spiral vacuum hose which was approximately five to six inches in diameter, fell and fractured her left hip.
On July 18, 1995, plaintiff filed a complaint against defendant in the Cuyahoga County Court of Common Pleas. On August 4, 1995, defendant filed an answer; in its answer, defendant asserted four affirmative defenses, including comparative negligence.
On May 1, 1996, defendant filed a motion for summary judgment. In a journal entry filed on June 25, 1996, the trial court granted defendant's motion for summary judgment. Appellant appealed and, in Siegal v. Magic Carpet Upholstery (July 17, 1997), Cuyahoga App. No. 70963, unreported, this court reversed and remanded the case, finding that the trial court erred in granting defendant's motion for summary judgment.
A jury trial was commenced on April 13, 1998. Plaintiff's first witness was Kenneth T. Baker, II, a firefighter and paramedic employed by the City of Shaker Heights. On December 21. 1994, Mr. Baker and his rescue squad crew responded to a call that a patient had tripped and was injured at the Golfview Apartments. When Mr. Baker and his crew arrived on the scene, they found plaintiff laying on the floor. Plaintiff told the paramedics that she had tripped over a hose. Mr. Baker testified that he noticed a hose "laying a couple feet away from the patient." Mr. Baker also stated he observed the carpet cleaning crew working in the apartment. On cross-examination, Mr. Baker testified that the hose was plainly visible and obvious to him when he walked in the door, and that he had no problem seeing the hose.
Mr. Baker was the crew chief and, therefore, was responsible for filling out the report. At the request of an attorney, Mr. Baker provided two additional statements. In a statement dated January 9, 1996, Mr. Baker noted in part: "I did see a carpet cleaning machine with hose in the room." An attorney contacted Mr. Baker and requested that Mr. Baker supplement his statement to include that he saw the carpet cleaning hose "going across the doorway"; Mr. Baker provided this supplemental statement on or about February 24, 1996, over fourteen months after the accident.
Mr. Baker testified that, to the best of his knowledge, the statements were true and accurate. However, upon cross-examination, Mr. Baker acknowledged that he responds to roughly 22 to 30 calls a month. In addition, Mr. Baker acknowledged that approximately three and a half years had lapsed between the subject accident and his trial testimony. Mr. Baker conceded that his memory of the incident had "dimmed quite a bit."
Plaintiff then called James E. Chepes, II, the owner of Magic Carpet Upholstery, and was permitted to examine him directly as if on cross-examination. Mr. Chepes testified that his company had performed carpet cleaning services for the Golfview Apartments in the past and, on December 21, 1994, a carpet cleaning crew was scheduled to clean plaintiff's apartment. Mr. Chepes testified that two of his employees, Darren Iorio and Daniel Kenst, were assigned to clean plaintiff's apartment. Mr. Chepes testified that he has not seen the apartment in question, that he has no personal knowledge of the incident and, moreover, could not recall exactly what his employees told him about plaintiff's accident.
Mr. Chepes acknowledged that the hoses used in carpet cleaning could pose a tripping hazard if a person was not looking where he or she was walking. Mr. Chepes testified that his company's carpet cleaning equipment includes three hoses, a garden hose that runs from a water source out to the truck, and a vacuum hose and the cleaning solution hose which run together from the truck to the wand. Mr. Chepes conceded that the vacuum hose should not have been laying across the doorway between the dining room and the living room. However, Mr. Chepes testified that he did not believe that the hose was across the doorway because, as a practical matter, the vacuum hose "follows" the workers around and his crew was working in the bedroom when plaintiff fell. Moreover, Mr. Chepes noted that the hose could have been moved to the doorway after plaintiff had fallen.
Plaintiff also called Darren Iorio as if on cross-examination. On December 21, 1994, Mr. Iorio and a co-worker, Daniel Kenst, were sent to the Golfview Apartments to remove some water stains from the carpet in the foyer area of plaintiff's apartment. Mr. Iorio testified that he warned plaintiff that the carpet cleaners were going to have hoses in her apartment and further warned her "to watch her step" and "to watch where she was walking.". Mr. Iorio noted that plaintiff's apartment was small.
According to Mr. Iorio, he and his co-worker ran the garden hose from the truck, through the dining room window, and directly to the kitchen sink. The vacuum and pressure hoses came through the living room window and were attached to a wand which was used to clean the carpeting.
According to Mr. Iorio, he and his co-worker finished cleaning the assigned area; however, plaintiff requested that they clean a couple other areas. Mr. Iorio agreed to clean the additional areas as a favor for plaintiff. Mr. Iorio testified that plaintiff went "in and out" while they were working, and that plaintiff had watched him and his co-worker clean portions of the carpet. Mr. Iorio heard plaintiff scream, and found her on the living room floor. Mr. Iorio testified that plaintiff was hysterical, and that she stated that she had fallen.
Mr. Iorio testified that the only equipment in or near the dining room area was the vacuum hose he was using. According to Mr. Iorio, he and his co-worker did not leave loose unused portions of hose laying on the floor. Moreover, the hose in question was not anywhere near the entranceway between the living room and the dining room.
Mr. Iorio and his co-worker finished cleaning the assigned area and then started backing the hoses out of the apartment. Mr. Iorio wanted to wrap up and "get out of the way of the paramedics before they got there."
Plaintiff then testified on her own behalf. Plaintiff stated that she was going to the kitchen to get some bottled water when she tripped over a big spiral hose which was underneath the archway between her dining room and the living room. At the time, plaintiff assumed that all of the equipment and hoses were in the bedroom.
Plaintiff did not know whether the hose she allegedly tripped on was hooked up to any other equipment. Plaintiff testified that she tried to stay out of the way of the carpet cleaners. Plaintiff also denied that the workers warned her about the hoses.
Plaintiff testified about her injuries, and then presented the videotape deposition of George F. Muschler, M.D. Then, after the admission of various exhibits, plaintiff rested. The defendant also rested after offering its exhibits. The case was then submitted to the jury.
During deliberation, the court received a written question from the jury: "If we find the plaintiff over 50 percent negligent, do we find for the defendant and use the defendant's verdict form?" The court's response was: "The answer to your question is "yes.' Please review pages 7-8 of the written instructions for further details."
The jury returned the following jury verdict form, signed by six of the eight jurors: "We, the Jury, being duly empaneled and sworn, find for the defendant Magic Carpet Upholstery and against the plaintiff, Bernice Siegal." In a journal entry dated April 15, 1998, the trial court entered final judgment on the verdict.
On April 20, 1998, appellant filed a motion for a new trial. In her motion, appellant claimed that the jury verdict was against the manifest weight of evidence. On May 8, 1998, the trial court denied appellant's motion for a new trial. On June 5, 1998, appellant filed the instant appeal.
 II.
In her sole assignment of error, plaintiff claims that the jury verdict in favor of defendant was against the manifest weight of the evidence; plaintiff insists that the preponderance of the evidence does not support the jury's finding on the issue of comparative negligence.
"It is well established that where an appellant challenges a trial court's judgment in a civil action as being against the manifest weight of the evidence, the function of the appellate court is limited to an examination of the record to determine if there is any competent, credible evidence to support the underlying judgment." Baughman v. Kregs (Dec. 10, 1998), Cuyahoga App. No. 73832, unreported, citing C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, 280; Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77; Chandler and Assoc., Inc. v. America'sHealtheare Alliance, Inc. (Oct. 30, 1997). Cuyahoga App. Nos. 71325, 71832, unreported. The trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony; therefore, there is a presumption that the findings of the trier of fact are correct. Seasons Coal Co., at 80.
As appellant has noted, the standard of review set forth inC.E. Morris and its progeny "is difficult to reconcile with the Ohio Supreme Court's recent opinion in State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541." Reed v. Key-Chrysler Plymouth
(Jan. 23, 1998), Greene App. No. 97-CA-44, unreported. Pursuant toThompkins, a weight of the evidence review considers all the evidence, not only that which supports the verdict. Thompkins, att 387. In addition, an appellate court is required to consider the credibility of the witnesses. Id. In effect, the appellate court sits as a "thirteenth juror" and may, within its discretion, disagree with the factfinder's resolution of the conflicting testimony. Id. at 388.
It is clear from the language of Thompkins that this standard is applicable, without modification, only to the review of criminal cases. Accord Reed, supra. We note that this court has continued to apply the C.E. Morris standard to civil appeals even after the release of the Thompkins decision. See Baughman, supra; Lalak v.Crestmont Construction, Inc. (Jan. 14, 1999), Cuyahoga App. 72567. unreported; Thomas v. Jacob (Nov. 5, 1998), Cuyahoga App. No. 73292, unreported; et al.
Even if we were to apply the standard enunciated in Thorapkins, plaintiff's appeal would still fail. As the supreme court noted inThompkins:
 The discretionary power to grant a new trial [on manifest weight grounds] should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
(Emphasis added.) This is not one of the exceptional cases in which the jury created such a manifest miscarriage of justice that the verdict must be reversed and a new trial ordered; the evidence does not weigh heavily against the jury's determination on the issue of comparative negligence.
This court has reviewed the entire record, including the transcript of the trial and exhibits admitted into evidence. In particular, we note that the hazard plaintiff allegedly tripped on was a conspicuous orange spiral vacuum hose which was approximately five to six inches in diameter. Plaintiff knew the carpet cleaning crew was using different hoses in her apartment, yet she acknowledged in effect that she was not watching where she was walking. This court was also impressed by the credible testimony of Darren lorlo; Mr. Iorio testified that, as part of the usual set-up procedure he had warned plaintiff about the hoses and further warned plaintiff "to watch her step" and "to watch where she was walking."
Based upon the foregoing, this court concurs with the jury's determination that plaintiff's own negligence was far greater than any negligence that could have possibly been attributed to defendant and its employees. Accordingly, the final judgment entered on the jury verdict in favor of defendant was not against the manifest weight of the evidence. Plaintiff's assignment of error is overruled, and the judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, ADM. J. and
 JAMES D. SWEENEY. J. CONCUR.
 LEO M. SPELLACY JUDGE